**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 15-cv-61654-GAYLES**

*In re*
|  |  |
|---|---|
| | **Case No. 14-24390** |
| **ALI REZA ZARGARAN,** | |
| **Debtor.** | **Chapter 7** |

_____/

**KENNETH A. WELT,** *as Chapter 7 Trustee*
*for Ali Reza Zargaran*,
              **Plaintiff,**

                                                          **Adv. Pro. No. 15-1083**
        **v.**

**ALI RAFIEE, et al.,**
              **Defendants.**

_____/

## FINAL JUDGMENT

**THIS CAUSE** came before the Court for a nonjury trial on October 4, 2016. After careful

consideration of the arguments of counsel, the stipulations of the parties, and the evidence presented

at trial, the Court makes the following findings of fact and conclusions of law, pursuant to Fed-

eral Rule of Civil Procedure 52(a)(1), and enters final judgment in this action in favor of the Plain-

tiff, pursuant to Federal Rule of Civil Procedure 58.

**I.      FINDINGS OF FACT**

        In this adversary action, Plaintiff Kenneth A. Welt, as Chapter 7 Trustee (the "Trustee") for

the bankruptcy estate (the "Estate") of Ali Reza Zargaran (the "Debtor"), seeks to avoid an alleged

unauthorized postpetition transfer of real property—located at 10431 Springcroft Court in Helotes,

Bexar County, Texas (the "Property")—from the Estate to the Defendant, Ali Rafiee, pursuant to

11 U.S.C. § 549(a).

### A.      *Procedural History*

On June 24, 2014 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition")

for relief under Chapter 11 of the Bankruptcy Code.[1] On October 2, 2014, the United States Trustee's

Office filed its Motion to Convert or Dismiss Case. On October 23, 2014, Judge Raymond B. Ray

of the U.S. Bankruptcy Court for the Southern District of Florida held a hearing on the Motion to

Convert. On October 27, 2014, the Bankruptcy Court entered an order converting the Debtor's

Chapter 11 case to Chapter 7 of the Bankruptcy Code (the "Conversion Order"). On October 30,

2014, Kenneth Welt was appointed as the Chapter 7 trustee.

On May 15, 2015, the Trustee filed his Amended Complaint (the "Complaint") in this

adversary action against Ali Rafiee. Rafiee filed his Answer and Affirmative Defenses to that

Complaint on June 3, 2015.

### B.      *The Debtor Obtains the Property*

On October 24, 2014, three days before the Bankruptcy Court entered the Conversion Order,

the Debtor and his wife, Maryam Baker (the "Debtor's Wife" or "Wife"),[2] without Bankruptcy

Court authority, acquired title to the Property from RH of Texas Limited Partnership (the builder)

by a special warranty deed. The Debtor and his Wife paid approximately $460,000 for the Property.

The Defendant, Ali Rafiee, whose full name is Ali Rafiee Hanify,[3] is a Spanish citizen of

Iranian descent who was born in Tehran, Iran.[4] Rafiee testified that, prior to the transaction at issue

in this case, he had been interested purchasing a house in San Antonio, Texas, with the intention

of perhaps retiring there, because of the apparent similarity between its climate and the climate he

---

[1]   The Court relies in part on the parties' Stipulated Facts, which appear in the Joint Pretrial Stipulation [ECF No. 28], as well as the admissible evidence submitted by the parties.

[2]   The evidence shows that the Debtor's Wife was born in Tehran, Iran, and has listed her maiden name as "Rafiei."

[3]   The Debtor's Wife's mother's name is Farideh Hanify.

[4]   Rafiee has not been allowed entry into the United States since July 13, 2015, when the U.S. Consulate General found him ineligible for a nonimmigrant visa. As a result, his testimony at trial was admitted via deposition designation.

was used to in Spain.[5] Rafiee testified that he called the builder of the Property in 2013 to inquire about purchasing it, but because it had not yet been constructed, Rafiee declined to purchase it at that time. Rafiee testified that he called the same phone number in October 2014 to inquire about purchasing it. He did not recall whether at that time he was connected with the builder or some other entity. He testified that during that phone call an individual told him that the house had been built and the Property sold but that the owner (*i.e.*, the Debtor) had fallen ill and wanted to sell the Property. Rafiee testified that he searched Bexar County's property search website, and by entering the Property's address he was able to obtain the Debtor's phone number, which he used to contact the Debtor to discuss purchasing the Property. However, the Property information page on the Bexar County's property search website, as that site was accessed on November 20, 2014, neither displayed nor otherwise provided the Debtor's phone number.

## C.   *The Transfer to Rafiee*

On November 12, 2014, approximately three weeks after the Debtor and his Wife purchased the Property, they (without Bankruptcy Court approval) contracted to sell the Property to Rafiee (the "Contract") for $375,000 (the "Purchase Price")—$85,000 less than what they paid for it. The Contract required, *inter alia*, no deposit, closing within fifteen days, and for the Debtor and his Wife to pay for and furnish title insurance to Rafiee.

Rafiee testified that on November 19, 2014, he brought 322,500 Euros[6] in cash in a duffel bag to a hostel in Barcelona, Spain, and gave that bag of cash to a man named Juan Morano, who represented that he was a partner of the Debtor. Rafiee testified that he never previously met or spoke to Morano.[7] At trial, Rafiee submitted a letter dated November 19, 2014, that he contends

---

[5]   There was no evidence submitted to show that Rafiee had ever visited the San Antonio, Texas, area at any time prior to the transaction at issue in this case.

[6]   On this date, 322,500 in Euros was worth approximately US$404,737.29.

[7]   Neither party submitted any other evidence or testimony as to Morano's identity, his relationship with the Debtor, or

was written by Morano and signed by both men (the "Morano Letter"), in which Morano attests that he received 322,500 Euros from Rafiee, the interested buyer of the Property listed (in translation) as "10431 Springcroft Ct., Helotes, Texas 78023, Lot 20, Block 8, Bridgepoint Unit 8 and 15 CB 4557, Bexar County." Def.'s Ex. B. Rafiee produced no banking or other financial records at trial that evidenced that he, in fact, paid the Purchase Price for the Property, nor did he produce any evidence to support the contention that he had the necessary funds to pay the Purchase price or sufficient income from his work as a freelance personal trainer to pay the Purchase Price.[8] Indeed, the Trustee's First Request for Production No. 9 asked Rafiee to produce "[a]ny document reflecting the source of payment for [his] purchase of the [Property]." Rafiee's response was "None."

Rafiee did not hire a property inspector to conduct an inspection of the Property prior to his purchase. He did not obtain an appraisal of the Property. He did not visit the Property. He did not have a title underwriter conduct a title search on the Property. He did not receive title insurance from the Debtor and his Wife as required under the terms of the Contract.

On the same date as Rafiee's alleged meeting with Morano—November 19, 2014—and seven days after execution of the Contract, the Debtor and his Wife transferred the Property (without Bankruptcy Court approval) to Rafiee by special warranty deed (the "Transfer"). At the time of the recording of the special warranty deed, no copy of the Petition was filed or recorded in the Official Public Records of Bexar County, Texas. Rafiee then entered into a lease agreement with the Debtor and his Wife to lease the Property back to them for a period of approximately one year, which either party could terminate with sixty days' written notice.

Rafiee testified that he did not know the Debtor prior to contacting him to express interest in the Property, and that he did not know the Debtor's Wife. He also testified that he did not know

---

how or why he came to be in Barcelona on the date of the transaction.

[8]   Rafiee, citing a distrust of the banking system in Spain, testified that he kept his money in cash at his home.

that the Debtor was in a bankruptcy case when he purchased the Property, nor did he know that the Trustee could have an interest in the Property. And he testified that he would not have purchased the Property had he known the Debtor was in bankruptcy.

## II.    CONCLUSIONS OF LAW

### A.    *The Trustee Is Entitled to Avoid the Transfer Under 11 U.S.C. § 549(a)*

The Trustee seeks to avoid the Transfer as an unauthorized post-petition transfer pursuant to 11 U.S.C. § 549(a). This Section provides:

> Except as provided in [11 U.S.C. § 549(b)[9] or (c)], the trustee may avoid a transfer of *property of the estate*—
>> (1) that occurs after the commencement of the case; and
>> (2)(A) that is authorized only under [11 U.S.C. §§ 303(f) or 542(c)]; or
>> (B) that is not authorized under this title or by the court.

11 U.S.C. § 549(a) (emphasis added). "[P]roperty of the estate," in an individual case that is converted from Chapter 11 of the Bankruptcy Code to Chapter 7 (as in the Debtor's case here), includes "all property of the kind specified in section 541 that the debtor acquires after the commencement of the case but before the case is . . . converted to a case under chapter 7." 11 U.S.C. § 1115(a)(1). Section 541 includes "[a]ll interest of the debtor and the debtor's spouse in community property as of the commencement of the case that is under the sole, equal, or joint management and control of the debtor." *Id.* § 541(a)(2)(A).

"Property interests are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 55 (1979). Therefore, because the Property is located in Texas, Texas law applies to the determination of whether the Property is "property of the estate" for present purposes. "In Texas, property possessed by either spouse during or on dissolution of marriage is presumed to be community property, absent clear and convincing evidence to the contrary." *Richardson v. Richardson*, 424

---

[9]    Subsection (b) applies only in involuntary bankruptcy cases, which is not the case here.

S.W.3d 691, 697 (Tex. Ct. App. 2014) (citing Tex. Fam. Code § 3.002). Given that no party has

provided clear and convincing evidence to the contrary, the Court concludes that the Property was

community property when the Debtor acquired it. Moreover, the Property was acquired on October

24, 2014, three days prior to the Bankruptcy Court's entry of the Conversion Order, which con-

verted the Debtor's bankruptcy case to a Chapter 7 case. Accordingly, the Court concludes that the

Property is "property of the estate" for purposes of a Section 549(a) avoidance analysis.

Having made this determination, the Court next concludes, based on the undisputed evi-

dence presented, that the Transfer is avoidable under Section 549(a). The Debtor and his Wife

acquired the Property on October 24, 2014, four months after the Debtor filed his Bankruptcy

Petition. And the Transfer was not authorized under the Bankruptcy Code, nor was it authorized

by the Bankruptcy Court.

### B.    *Rafiee Is Not Entitled to a 11 U.S.C. § 549(c) Defense*

The principal issue for the Court to decide is whether the exception to an avoidance found

in Section 549(c) applies. That section provides, in pertinent part:

> The trustee may not avoid under [11 U.S.C. § 549(a)] a transfer of an interest in real
> property to a good faith purchaser without knowledge of the commencement of the
> case and for present fair equivalent value unless a copy or notice of the petition was
> filed, where a transfer of an interest in such real property may be recorded to perfect
> such transfer, before such transfer is so perfected that a bona fide purchaser or such
> real property, against whom applicable law permits such transfer to be perfected,
> could not acquire an interest that is superior to such interest of such good faith
> purchaser.

11 U.S.C. § 549(c). In other words, Section 549(c) "creates a three-part test: (1) was the transferee

a 'good faith purchaser without knowledge of the commencement of the case'; (2) did the trans-

feree pay 'present fair equivalent value'; and (3) was the transferee's interest perfected before a

copy or notice of the bankruptcy petition was recorded, such that a bona fide purchaser under state

law could not have acquired a superior interest." *Morton v. Kievit* (*In re Vallecito Gas, LLC*), 461

6

B.R. 358, 402 (Bankr. N.D. Tex. 2011) (quoting 11 U.S.C. § 549(c)) (citing, *e.g.*, *Fjeldsted v. Lien* (*In re Fjeldsted*), 293 B.R. 12, 19 (9th Cir. BAP 2003)); *accord Cooper v. Bullock* (*In re Bullock*), No. 10-4111, 2012 WL 2930678, at *2 (Bankr. N.D. Ga. June 12, 2012). The third element of this defense has already been satisfied; the parties have stipulated that the Trustee did not file a notice of the Debtor's petition in the Bexar County records prior to the Transfer. Therefore, the Trustee can ultimately avoid the transfer unless Rafiee meets his burden to prove that he is a good faith purchaser without knowledge of the commencement of the Debtor's bankruptcy case for present fair equivalent value. *See Litton Loan Servicing, LP v. Rockdale County* (*In re Howard*), 391 B.R. 511, 517 (Bankr. N.D. Ga. 2008) ("An unauthorized postpetition transfer is avoidable under § 549(a) unless a party can establish that it is 'not avoidable' under § 549(b) or (c). If a party is not a good faith purchaser (or fails to meet any of the other requirements), the § 549(c) defense is unavailable and the transfer is subject to avoidance."); *see also* Fed. R. Bankr. P. 6001 ("Any entity asserting the validity of a transfer under § 549 of the Code shall have the burden of proof.").

### 1.   Rafiee Is Not a Good Faith Purchaser Without Knowledge of the Debtor's Bankruptcy Case

The "presence [of good faith] turns on whether the transaction carries the earmarks of an arms-length bargain under the circumstances." *In re Vallecito Gas*, 461 B.R. at 405 (quoting *Brown v. Harris* (*In re Auxano, Inc.*), 96 B.R. 957, 960 (Bankr. W.D. Mo. 1989)) (internal quotation marks omitted). Rafiee has submitted only his own self-serving testimony as evidence that he satisfies this element. But in the face of conflicting evidence, the Court does not find this testimony credible for several reasons.

First, Rafiee testified that he obtained the Debtor's phone number by searching the Bexar County records website. A printout of that website, however, reveals that the property owner's

phone number is not displayed.

Second, Rafiee testified that he was informed by someone (though he does not recall if it was the Property's builder, the developer, or someone else entirely) that the Debtor was ill and wished to sell the Property (three weeks after acquiring the Property himself). However, the Court is dubious that (1) even if the Debtor was ill, the builder would have possessed that information in the first place; and (2) even if the builder possessed this information, it would divulge that information to an unknown individual over the telephone.

Third, Rafiee testified that he did not know the Debtor's Wife, but the evidence submitted by the Trustee shows that both Rafiee and the Debtor's Wife were born in Tehran, Iran; that the Debtor's Wife has stated that her maiden name is "Rafiei" (a far-too-close spelling of Rafiee's name to be coincidental); and that the Debtor's Wife's mother's last name is Hanify, as is Rafiee's. And if Rafiee is, in fact, related to the Debtor's Wife or her mother, the Court finds it hard to believe that he would not have known of the Debtor's pending bankruptcy case at the time of the Transfer.

And fourth, Rafiee testified that he wished to purchase the Property because he wished to retire in the San Antonio area, but he also testified that he had never visited the area prior to purchasing the Property. The evidence shows that his ability to remain or reside in the United States as a noncitizen was uncertain at best at the time he purchased the Property. His visa application was later denied and he has not been permitted to enter the country since then.

Finally, the myriad other suspicious circumstances surrounding the Transfer support the conclusion that Rafiee was not acting in good faith, because common sense dictates that no reasonable purchaser of residential property would have purchased the Property under these circumstances:

- The Debtor and his Wife were selling the Property less than a month after acquiring the Property themselves;
- The Debtor and his Wife purportedly contracted to sell the property for $85,000 less than the original purchase price, required that no deposit be paid, and required closing

8

only fifteen days from the date of the contract;

- The Debtor and his Wife contracted to provide title insurance for the Property but ultimately did not do so. Rafiee consummated the Transfer regardless;

- Rafiee purchased the Property without an appraisal;

- Rafiee purchased the Property without an inspection;

- Rafiee purchased the Property without viewing it;

- Rafiee agreed to immediately lease the Property back to the Debtor and his Wife, despite his stated desire to reside in the Property; and

- Most suspicious of all, Rafiee claims he paid for the Property by delivering a duffel bag with 322,500 Euros in cash to a stranger at a hostel who claimed to be a partner of the Debtor seven days after the Contract was executed.

In sum, Rafiee has not met his burden to prove that he was a good faith purchaser without knowledge of the Debtor's bankruptcy case. Nothing about the Transfer "carries the earmarks of an arms-length bargain." *In re Vallecito Gas*, 461 B.R. at 405 (citation omitted). Furthermore, even if Rafiee did not have ***actual*** knowledge of the Debtor's bankruptcy, he possessed "sufficient facts to induce a reasonable person to investigate whether the [D]ebtor was in bankruptcy." *Id.* (citation omitted). Thus, the Court concludes that Rafiee has failed to satisfy the first element of his purported Section 549(c) defense.

### 2.    Rafiee Did Not Pay "Present Fair Equivalent Value" for the Property

The Court also concludes that Rafiee has not proven that he paid present fair equivalent value for the Property. Aside from his own self-serving testimony and the Morano Letter (which itself is of dubious provenance), Rafiee presented no evidence that he paid ***any value at all*** for the Property, let alone present fair equivalent value.

At the outset, the Court declines to give any credence to the Morano Letter. The Letter could have been generated at any time for this specific purpose, and Rafiee has proffered no external corroborating evidence or testimony as to its veracity or as to the identity of its purported author.

Without providing any documentary evidence (other than the Morano Letter, which the

9

Court disregards), Rafiee expects the Court to believe, first, that he actually *possessed* 322,500 Euros such that he could afford to pay the Purchase Price outright, despite offering only vague testimony about his employment, income, and personal finances; and, second, that those 322,500 Euros were simply sitting in his house somewhere such that he could put the money in a duffel bag and bring it to a hostel to hand over to someone he had never met. Simply put, the Court does not believe Rafiee. In the absence of any extrinsic evidence that such funds existed and were actually transferred to the Debtor in exchange for the Property on November 19, 2014, the Court concludes that Rafiee has failed to meet his burden to prove the payment of present fair equivalent value necessary to satisfy the second element of his purported Section 549(c) defense.

*     *     *

Based on the foregoing, it is **ORDERED AND ADJUDGED** that final judgment is hereby **ENTERED**, pursuant to Federal Rule of Civil Procedure 58, **IN FAVOR OF** Plaintiff Kenneth A. Welt, as Chapter 7 Trustee for Ali Reza Zargaran, and **AGAINST** Defendant Ali Rafiee.

Pursuant to 11 U.S.C. § 550(a)(1), the Trustee **SHALL RECOVER**, for the benefit of the Debtor's Estate, the specific Property transferred by the Debtor to the Defendant. The Property is deemed property of the Debtor's Estate that the Trustee is permitted to sell free and clear of any interest of the Defendant. The Trustee shall submit a proposed order to this effect for entry by the Court should such order be necessary.

This action is **CLOSED**. The Court retains jurisdiction to enter post-judgment relief.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 28th day of October, 2016.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

10